**Affirmed and Memorandum Opinion filed November 5, 2019.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00473-CV

## IN THE INTEREST OF K.J.B., AND K.J.B., CHILDREN

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2018-00508J**

## MEMORANDUM OPINION

Appellant J.B. ("Father") appeals the trial court's final decree terminating his parental rights with respect to his children K.J.B. ("Karl") and K.J.B. ("Kevin").[1] The trial court terminated Father's parental rights on predicate grounds of endangerment and failure to comply with the service plan for reunification. *See generally* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), and (O). The trial court further found that termination of Father's rights was in the children's best interest

---

[1] Pursuant to Texas Rule of Appellate Procedure 9.8, we use fictitious names to identify the minors and other family members involved in this case. *See* Tex. R. App. P. 9.8.

and appointed the Department of Family and Protective Services as the children's managing conservator. In six issues, Father challenges the legal and factual sufficiency of the evidence to support the trial court's findings on each predicate ground, as well as the best interest finding and the appointment of the Department as managing conservator. Father further argues that he was deprived of due process and equal protection under the law because he did not receive actual notice of the trial setting. Because we conclude the evidence is legally and factually sufficient to support the trial court's findings and the trial court did not abuse its discretion in denying Father's motion for new trial, we affirm the decree of termination.

## BACKGROUND

### I. Pretrial Proceedings

Karl was born to T.J.W. ("Mother") and Father in 2016. Kevin was born to Mother and Father one year later.

The Department filed an original petition in February 2018, seeking the termination of Mother's and Father's parental rights with respect to Karl, Kevin, and their older half-sister. The Department attached to its original petition the affidavit of Deneshun Graves, a Department investigator.

The affidavit reflects that on the day Kevin was born the Department received a referral alleging neglectful supervision because Mother tested positive for cocaine six months earlier while pregnant with Kevin. Kevin's meconium test results were positive for cocaine at the time of his birth.

Another Department investigator, Adrienne Moore, spoke with the hospital social worker the day after the referral. Moore interviewed Mother, who said she lived with S.W. ("Grandmother") and had two other children. Mother identified Father as Karl's and Kevin's father and another man as her daughter's father. After

2

removal the children were placed with Grandmother. Moore visited Grandmother's home and observed that the home appeared safe and appropriate. Grandmother's background check did not present concerns. Grandmother agreed to be an in-home safety monitor and further agreed to not allow unsupervised contact between the children and Mother.

That same day Moore met with Father at the hospital. Father admitted paternity of both Karl and Kevin and admitted a criminal history of sexual assault and possession of a controlled substance. Both parents agreed to the safety plan to allow the children to remain with Grandmother.

Approximately one month after the Department's petition was filed Father appeared at an adversary hearing represented by attorney Jerry Acosta. The trial court appointed the Department temporary managing conservator and notified both parents of certain actions required of them to obtain return of their children. One of those requirements was that the parents report to random drug screenings and test negative for drugs. Father subsequently had two negative drug tests. One month later the Department filed family service plans. The trial court signed an order requiring the parents to comply with certain services in order to obtain their children's return.

One of the services Father was required to complete was a psychosocial assessment, which was done by Dr. Shilpa Trivedi at Trivedi Psychological Services. Trivedi recommended that appellant see a specialist due to his conviction for sexual assault. Trivedi's notes reflect that Father was defensive, evasive, slightly hostile, and argumentative in sessions. Trivedi discharged Father from therapy due to his "behaviors with [Trivedi] of arguing, defensiveness, oppositionality and general hostile tone when encouraged to reflect upon, process and discuss anything personal with the goal of improving self." Trivedi noted that due to Father's "continued hostility" toward the therapist, Trivedi "will not be open to reopening his case."

## II.      Trial

The parties proceeded to a bench trial. Father's attorney orally moved for continuance. The trial court denied the motion for continuance and granted the attorney's motion to withdraw. The trial court began trial and accepted the voluntary relinquishments of Mother and the oldest child's father. The trial court then appointed a new attorney (the fourth) for Father and recessed the trial to permit the new attorney, Rodney Jones, time to prepare.

Approximately one month later Jones filed a motion to withdraw as Father's counsel citing as his reason the inability to effectively communicate with Father in a manner consistent with good attorney-client relations. The trial court then appointed a fifth and final attorney to represent Father.

When trial resumed, approximately three months after it started, and two months after the fifth attorney was appointed, Father's attorney orally moved for continuance (based upon Father's absence at the trial). The trial court denied the continuance and proceeded to trial.

Before any testimony the Department introduced into evidence copies of the family service plans, drug screening results, psychological records from Dr. Trivedi, certified copies of eleven criminal instruments on Father, a transcript of the second permanency hearing, and records from Father's anger management counselor. Father objected to admission of an indictment for terroristic threat against Mother because the charge was subsequently dismissed. The trial court overruled the objection and admitted the indictment and the dismissal documents.

Crystal Portis, the children's caseworker, testified that Karl was two years old and Kevin was one year old at the time of trial. According to Portis, the children came into the Department's care because Mother tested positive for cocaine when

Kevin was born and there were allegations of domestic violence between Mother and Father. Mother told Portis that Father was "very violent" toward her and that on several occasions while this case was pending Father had physically assaulted Mother. One assault was so severe Mother had to seek treatment in the emergency room. Portis further testified (over objection) that Father assaulted Mother in April 2018, May 2018, and January 2019.

Father was asked by the Department to submit to at least twelve random drug tests. Portis testified that Father missed two or three tests. Four of the drug tests were ordered by the court and Father was required to submit to the tests before leaving the courthouse. One of those tests, on November 13, 2018, was positive for cocaine. In August 2018, the trial court requested that Father submit to a drug test immediately after a hearing, but Father left the courthouse without being tested. Father's participation in the court-ordered services was sporadic. When Portis offered Father information about completing his services, Father became combative toward her and the service providers.

Portis testified that Father's behavior was a danger to his children's physical and emotional well-being. According to Portis, Father was aggressive and combative with Portis as well as service providers. Portis noted, "We have two very young impressionable boys who sees [sic] their father in these acts[.]"

Portis further testified Father was allowed supervised visitation with the children at the Department offices and during some of the visits Father would stand in the hallway and try to watch the caseworker as they took the children out of the office. Father was asked several times not to follow the person transporting the children. On one occasion Father blocked the transporter from leaving with the children. Father followed caseworkers in his car after visits. Portis testified she was afraid of Father because of his intimidating behavior and the violent acts he had

5

committed throughout the case. Portis had not been to Father's home because she was afraid to go there alone. Portis tried to coordinate times with the Child Advocate to accompany her, but Father rescheduled their visits "a couple of times."

Portis informed Father of the final hearing on the Monday before trial. Father was discharged as unsuccessful from the Batterer Intervention Protection Program, anger management, and individual counseling. Father refused to participate in substance-abuse treatment. In addition to the criminal history listed on the removal affidavit, Father also was incarcerated because he failed to register as a sex offender. At the time of trial Father had registered as a sex offender and registered his address as "transient," which Portis testified meant he was homeless. Portis testified that Father knew about Mother's drug use and did nothing to report it or protect the children from it.

The children were placed with Grandmother and were very attached to her. According to Portis, the children "displayed nothing but kindness and affection towards the grandmother. The grandmother does the same in return." Portis described Grandmother's home as very safe and described the children as thriving.

When asked whether Father could continue with supervised visits with his children, Portis responded that it would not be safe for Father to continue to be around his children. She explained that the volatile nature of Father's behavior and the unpredictability of what may trigger the noted behaviors would not be safe for the children. Portis did not recommend that Father be allowed to visit the children in Grandmother's home because, unlike the Department offices, Grandmother's home did not have a security guard. Given Father's combativeness the Department was not willing to risk creating an unsafe environment for the children.

Grandmother testified that she had been taking care of the children for two years, that Mother and Father's relationship was violent, and that Grandmother had

seen bruises on Mother caused by Father's violence approximately eight times in a four-year period. Grandmother further testified she was certain that if Father's parental rights were not terminated, he would be violent in front of the children.

Grandmother was willing to adopt the children and protect them from Mother and Father. Grandmother had the support of her brother to help take care of the children. The children were bonded with Grandmother and she was ensuring that their educational and physical needs were being met. Grandmother testified she would contact the authorities if Father came to her house.

Michael Luna, the Child Advocate, testified that he had observed a visit between Father and Kevin. Luna testified that Father appeared distracted. In Luna's view, Father had not demonstrated that he could monitor his children appropriately.

Luna also observed the children with Grandmother. He saw a good bond between Grandmother and the children. The children seemed happy and comfortable with Grandmother. Luna believed that it would be detrimental to return the children to Father. Luna's belief was based on Father's history and "violent tendencies."

At the conclusion of the bench trial the trial court terminated Mother's parental rights on the predicate ground that she executed a voluntary affidavit of relinquishment. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(K). The trial court also terminated Father's parental rights on the predicate grounds of endangerment and failure to follow the service plan. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), and (O). The trial court further found that termination was in the best interest of the children and the Department should be appointed sole managing conservator of both children.

## III.      Motion for New Trial

Father filed a motion for new trial in which he alleged his trial counsel failed

7

to inform him of the final trial date. Father alleged he was harmed by trial counsel's failure because he was unable to participate in the defense of the termination case against him. Father filed affidavit with his motion in which he averred:

> On or about March 21, 2019, [Attorney] was appointed to represent me in this matter. I subsequently made numerous attempts to contact [Attorney] to discuss this case, but I was never able to contact him. On or about April 12, 2019, therefore, I traveled to the Harris County Juvenile Justice Center in an attempt to locate [Attorney]. I was eventually able to find him in the building, and introduce myself to him. Due to the difficulties I experienced in contacting him, I asked [Attorney] if it would be better if we communicated in the future via e-mail, and he agreed. I asked [Attorney] for his e-mail address, and he provided [me] with his office e-mail address at that time.

> From approximately April 12 – May 9, 2019, I sent numerous e-mails to [Attorney's] office, seeking information on my case. In addition to e-mails I also called [Attorney's] office several times.

> Despite my many attempts to get information on my case, no one from [Attorney's] office ever contacted me with the final trial date – or any other dates – and the trial in this matter went forward without me being in attendance. As such, I was not afforded the opportunity to participate in the defense of the CPS case against me, or offer evidence refuting CPS' termination allegations.

None of the emails referenced in Father's affidavit were attached to the affidavit. The Department responded with an affidavit from Portis, stating as follows:

> On or about April 22, 2019, I advised [Father] of his subsequent trial date. After the conclusion of the parent child visit, I verbally advised [Father] that at the hearing on April 18, 2019 that we were given a new trial date of May 9, 2019.

> Despite me advising [Father] of his upcoming trial date, he was not present on the day of trial, therefore, the trial went forward without him being in attendance. I verbally provided [Father] with notice and therefore, he was afforded the opportunity to participate in the defense of the allegations made against him, however, he voluntarily chose not to do so.

8

The trial court held a hearing on Father's motion for new trial at which Father and Portis testified.

Father testified (1) he tried calling his fifth attorney several times after he was appointed with no response; (2) Father went to the courthouse to meet with his attorney "a couple of weeks" after that attorney was appointed; (3) Father and his attorney agreed at that meeting to communicate via email and (4) he communicated with his attorney's office via email but was never advised of the trial date. Father disputed Portis's affidavit that she had notified him of the trial setting. Father admitted he was in court in February when the trial date was announced but could not remember hearing the trial setting. Father admitted that on February 14, 2019, he learned the case was reset to April 18, 2019. Father also admitted he did not appear for trial on April 18, 2019.

Portis testified that she was supervising Father's visit with his children on April 22, 2019, and when the visit was over, she told Father that the next visit would be May 5, 2019. Portis also told Father that the trial was reset from April 18 to May 9, 2019. Father responded, "Okay." Father disputed Portis's testimony.

The trial court denied Father's motion for new trial.

## ANALYSIS

Father asserts that the evidence is legally and factually insufficient to support the trial court's predicate termination findings with respect to endangerment and failure to comply with the service plan for reunification. *See generally* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (O). Father also challenges the trial court's best-interest finding and appointment of the Department as managing conservator. We address these challenges below.

9

## Standards of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re A.C.*, 560 S.W.3d 624, 629 (Tex. 2018); *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a "correspondingly searching standard of appellate review." *In re A.C.*, 560 S.W.3d at 630; *see In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish, by clear and convincing evidence, one or more acts or omissions enumerated under subsection (1) of section 161.001(b) and that termination is in the best interest of the child under subsection (2). Tex. Fam. Code Ann. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

In reviewing legal sufficiency of the evidence in a parental termination case, we must consider all evidence in the light most favorable to the finding to determine

whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *Id.*; *In re G.M.G.*, 444 S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). However, this does not mean that we must disregard all evidence that does not support the finding. *In re D.R.A.*, 374 S.W.3d at 531. Because of the heightened standard, we also must be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.*

In reviewing the factual sufficiency of the evidence under the clear-and-convincing burden, we consider and weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *In re A.C.*, 560 S.W.3d at 631; *see In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.O.A.*, 283 S.W.3d at 345. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

## I. Predicate Termination Findings

The trial court made predicate termination findings pursuant to Texas Family Code section 161.001(b)(1)(D), (E), and (O). Under section 161.001(b)(1), parental rights may be terminated if the fact finder finds by clear and convincing evidence that the parent has (*inter alia*):

> (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional

well-being of the child;

(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

[or]

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for abuse or neglect of the child[.]"

Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Due process requires, however, that when a parent has raised the issue of insufficiency of the evidence to support the trial court's findings under section 161.001(b)(1)(D) or (E) of the Family Code, an appellate court must address one of those endangerment findings to ensure a meaningful appeal. *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019); *In re P.W.*, 579 S.W.3d 713, 720 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Due process and due-course-of-law requirements also mandate that an appellate court detail its analysis for an appeal of termination of parental rights under section 161.001(b)(1)(D) or (E) of the Family Code. *In re P.W.*, 579 S.W.3d at 720. In this case Father challenges the trial court's findings of endangerment. We, therefore, address the trial court's endangerment findings under section 161.001(b)(1)(D) and (E).

The trial court found that Father "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D). "Endanger" means to expose a child to loss or injury or to jeopardize a child's

emotional or physical health. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). Endangerment under subsection (D) focuses on evidence related to the child's environment. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Environment" refers to the acceptability of living conditions, as well as a parent's conduct in the home. *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the children's home can create an environment that endangers the physical and emotional well-being of children as required for termination under subsection (D). *See In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). In scrutinizing the endangerment findings, we focus not only on evidence of endangerment but also on evidence showing the parent's awareness of the endangering environment. *In re J.E.M.M.*, 532 S.W.3d 874, 880–81 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The trial court further found that Father "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children." *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the children's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failure to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A child is endangered when the environment creates a potential for danger of which the parent is aware but disregards. *In re S.M.L.*, 171 S.W.3d at 477. Termination under subsection (E) must be based on more than a single act or omission — the evidence must demonstrate a voluntary, deliberate, and conscious

course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

While endangerment under subsection (E) often involves physical endangerment, the statute does not require that the conduct be directed at a child or that the child actually suffer physical injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *See In re S.R.*, 452 S.W.3d at 360; *see also Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) ("'[E]ndanger' means to expose to loss or injury; to jeopardize"). As a general rule, subjecting children to a life of uncertainty and instability endangers the children's physical and emotional well-being. *In re J.O.A.*, 283 S.W.3d at 345.

Incarceration of a parent alone will not support termination, but evidence of past and continuing endangering criminal conduct, convictions, and imprisonment may support a finding of endangerment. *See In re C.A.B.*, 289 S.W.3d at 886. Likewise, "[d]omestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

A parent's decision to engage in illegal drug use during the pendency of a termination suit may support a finding that the parent engaged in conduct that endangered the children's physical or emotional well-being. *See In re A.H.A.*, No. 14-12-00022-CV, 2012 WL 1474414, at *7 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.). Additionally, a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent was avoiding testing because the parent was using illegal drugs. *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Here, Father asserts that the evidence does not support the finding that he endangered the children. We disagree.

14

The record establishes a voluntary, deliberate, and conscious course of conduct by Father that endangered the children's emotional and physical well-being. The record further establishes that Father knowingly allowed his children to remain in an endangering environment because he not only knew Mother was using illegal drugs while pregnant, he committed acts of domestic violence against Mother. *See In re C.A.B.*, 289 S.W.3d at 883; *In re S.M.L.*, 171 S.W.3d at 477. The evidence shows that Father had six previous convictions including a conviction for sexual assault and another for promotion of prostitution.

Father discounts his criminal history due to the remote temporal proximity between some of his convictions and the children's removal. We agree in part that the record does not reflect that Father's distant-past convictions necessarily evince a present or future danger to the children to the extent those convictions involved conduct unrelated to the reasons prompting the children's removal. *See Wetzel v. Wetzel*, 715 S.W.2d 387, 389-91 (Tex. App.—Dallas 1986, no writ) (holding that, in termination suit, acts done in the distant past are insufficient to support termination unless the evidence proves a present or future danger to the child); *see also In re L.M.*, 572 S.W.3d 823, 835 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The record further reflects that Father used cocaine and that Father knew Mother was using cocaine. There is evidence in the record that both parents walked out of a drug testing facility before submitting to a drug screening. The trial court is entitled to consider the parents' failure to attend drug screenings as evidence of illegal drug use. *In re E.R.W.*, 528 S.W.3d at 265. The evidence of illegal drug use, criminal conduct, and domestic violence supports the trial court's findings of endangerment under subsections (D) and (E). *See In re E.R.W.*, 528 S.W.3d at 264-65; *In re C.A.B.*, 289 S.W.3d at 886; *In re J.I.T.P.*, 99 S.W.3d at 845.

When viewed in the light most favorable to the trial court's findings, the

record evidence is sufficient to support the trial court's determination that termination of Father's parental rights was justified under section 161.001(b)(1)(D) and (E) of the Family Code. *See In re J.O.A.*, 283 S.W.3d at 344. Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(D) and (E). *See id.* at 345. The evidence therefore was factually sufficient to support the trial court's section 161.001(b)(1)(D) and (E) findings. *See id.* We overrule Father's challenges to those findings.

## II.     Best Interest of the Children

Father also challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in the children's best interest.

The fact finder may consider the following factors to determine the best interest of the children: (1) the desires of the children; (2) the present and future physical and emotional needs of the children; (3) the present and future emotional and physical danger to the children; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the children; (6) the plans for the children by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment); *In re E.R.W.*, 528 S.W.3d at 266.

16

Courts apply a strong presumption that the best interest of the children is served by keeping the children with their natural parents and the burden is on the Department to rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment is also presumed to be in the children's best interest. Tex. Fam. Code Ann. § 263.307(a).

Multiple factors support the trial court's finding that termination of Father's parental rights is in the children's best interest.

## A.     Desires of the Children

The children were approximately two and three years old at the time of trial in February, May, and June 2019, and had been living with Grandmother for most of their lives. Given their tender ages, the children cannot articulate their desires. When children are too young to express their desires, the fact finder may consider whether the children have bonded with their caregiver, are well-cared for by them, and have spent a minimal amount of time with their parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Testimony at trial showed that the children had bonded with Grandmother and that the Department's long-term plan was for Grandmother to adopt the children. Portis testified that the children "displayed nothing but kindness and affection towards" Grandmother and that Grandmother "does the same in return." Luna also observed a bond between the children and Grandmother. Neither witness had any concerns about Grandmother's ability to care for the children and provide them with a stable environment.

Though Father asserts that the children enjoyed visiting with him and the visits were appropriate, the record does not support this contention. Portis and Luna both testified that Father was unable to control the children during visits. This factor

17

supports the trial court's finding that termination of Father's rights is in the children's best interest.

### B.      Present and Future Physical and Emotional Needs of the Children

Our analysis of the present and future physical and emotional needs of the children focuses on the children's innate need for permanence. *See In re D.R.A.*, 374 S.W.3d at 533. The goal of establishing a stable, permanent home for children is a compelling government interest. *See id.*

The record reflects that Father committed domestic violence against Mother, used illegal drugs while the case was pending, and knew Mother was using illegal drugs while the children were in her care. The record further reflects Father was aggressive and combative with almost every service provider he encountered and with Department employees, even those facilitating visitation with his children. From this past inability to be present and to meet the children's physical and emotional needs, the fact finder reasonably could infer that Father is unable or unwilling to meet these needs in the future. *See In re J.D.*, 436 S.W.3d at 118.

Father argues that he was falsely accused and that the allegations of combativeness and aggressiveness amounted to speculation and false statements. Father argues that the Department "acknowledged that there was confusion over the statements in the affidavit and Portis subsequently admitted that the only test results she had in her file for the period in question were negative." In making this assertion Father cites the record of a review hearing that was admitted into evidence. That hearing occurred on August 28, 2018. Portis testified that the drug test reports she had at the hearing reflected negative results. Portis further testified that Father had been ordered to submit to a drug test earlier that month while he was in the courtroom. Father was ordered to remain in the courtroom to facilitate the drug test, but Father left the courtroom without taking the test. At trial, on May 9, 2019,

18

approximately eight to nine months later, Portis testified that Father had some negative drug tests, a positive test from November 15, 2018, and at least four occasions where Father refused to submit to a drug test.

Whether the caseworker and Child Advocate were telling the truth is a matter of credibility to be determined by the fact finder. In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and "to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (quoting *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.)). "As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination, and will not substitute its judgment for that of the trial court." *In re H.P.J.*, No. 14-17-00715-CV, 2019 WL 1119612, at *3 (Tex. App.—Houston [14th Dist.] Mar. 12, 2019, no pet.) (mem. op.).

We therefore rely on the trial court's determination of the credibility of the witnesses. This factor supports the trial court's best-interest finding.

### C. Acts or Omissions of the Parent that May Indicate the Existing Parent-Child Relationship is Not Appropriate

Father's continued domestic violence against Mother, drug use, and aggression toward those caring for his children also support the trial court's best-interest determination. *See In re S.R.*, 452 S.W.3d at 366 (the fact finder may infer from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent).

The record shows that Father failed one drug screening and failed to complete two to three scheduled drug screenings during the pendency of the underlying suit to terminate parental rights. Additionally, Father has continued to be violent toward

19

Mother and aggressive with those caring for his children. This factor weighs in favor of the trial court's best-interest finding.

### D. Parental Abilities of Those Seeking Custody, and Stability of the Home or Proposed Placement

The factors concerning the parental abilities of those seeking custody, and the stability of the home or proposed placement compare the Department's plans and proposed placement of the children with the plans and home of the parent seeking to avoid termination. *See In re D.R.A.*, 374 S.W.3d at 535.

Portis stated that the Department's long-term plan was for the children to be adopted by Grandmother. Portis testified that she had no concerns about the children's placement with Grandmother and the children have bonded with Grandmother. Luna, the Child Advocate, testified that it would be detrimental to return the children to Father. Grandmother was taking care of all of the children's needs and neither Portis nor Luna had any concerns about her ability to continue caring for the children.

On the other hand, the record does not contain any evidence suggesting that Father would be able to provide long-term care for the children. This consideration strongly supports the trial court's best-interest determination.

Viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis and all the evidence equally for our factual-sufficiency analysis, we conclude that a reasonable fact finder could have formed a firm belief or conviction that termination of Father's parental rights was in each of the children's best interest. *See* Tex. Fam. Code Ann. § 161.001(b)(2). We overrule Father's challenge to this finding.

## III. Conservatorship

In his fifth issue, Father contends the trial court erred in naming the

Department as managing conservator of the children. We review a trial court's appointment of a non-parent as sole managing conservator for abuse of discretion and reverse only if we determine the appointment is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007).

A parent shall be named a child's managing conservator unless, as relevant here, the court finds that the appointment of a parent would significantly impair the child's physical health or emotional development. *See* Tex. Fam. Code § 153.131(a). Although the trial court made this finding with respect to Father, when the parents' rights are terminated, as here, section 161.207 controls the appointment of a managing conservator. *In re I.L.G.*, 531 S.W.3d 346, 356–57 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Section 161.207 states, "If the court terminates the parent-child relationship with respect to both parents or to the only living parent, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." Tex. Fam. Code § 161.207(a). Having terminated both parents' rights, the trial court was required to appoint the Department or another permissible adult or agency as the children's managing conservator. *See In re I.L.G.*, 531 S.W.3d at 357. The appointment may be considered a "consequence of the termination." *Id*.

We have concluded the evidence supporting Father's termination is legally and factually sufficient under section 161.001(b). Accordingly, section 161.207 controls. We conclude the trial court did not abuse its discretion in appointing the Department as sole managing conservator of the children. *See In re I.L.G.*, 531 S.W.3d at 357. We overrule Father's issue challenging appointment of the Department as managing conservator.

## IV.      Motion for New Trial

In his sixth issue Father claims he was deprived of due process and equal

21

protection when the trial court denied his motion for new trial.

We review the denial of a motion for new trial for abuse of discretion. *In re J.H.*, 486 S.W.3d 190, 194 (Tex. App.—Dallas 2016, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). "Under an abuse of discretion standard, the appellate court defers to the trial court's factual determinations if they are supported by evidence, but reviews the trial court's legal determinations de novo." *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011). In the new-trial context, the trial court is the fact finder and accordingly is the sole judge of the witnesses' credibility. *In re J.R.P.*, 526 S.W.3d 770, 777 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

The record reflects that counsel was first appointed for Father on February 20, 2018, twelve days after the original petition for termination was filed. Appointed counsel filed an answer on Father's behalf on that day. On May 15, 2018, Father's appointed counsel appeared at a status hearing on Father's behalf. Subsequently another attorney was appointed to represent Father. Father and his new attorney appeared at a permanency hearing on August 28, 2018. Father and this second attorney again appeared at a permanency hearing on November 13, 2018. On December 13, 2018, a third attorney appeared on Father's behalf at a special status hearing. On February 21, 2019, a fourth attorney who was appointed for Father filed an answer. One month later, on March 21, 2019, Father's fifth attorney was appointed to represent Father and that attorney filed an answer on Father's behalf.

Texas Rule of Civil Procedure 245, entitled "Assignment of Cases for Trial," provides that a trial court "may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties." Tex. R. Civ.

22

P. 245. If a timely answer has been filed in a contested case or the defendant otherwise has made an appearance, due process rights are violated when a judgment is subsequently entered without the party having received notice of the setting of the case. *Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 86–87 (1988). A trial court's failure to comply with the notice requirements in a contested case deprives a party of his constitutional right to be present at the hearing and to voice his objections in an appropriate manner, resulting in a violation of fundamental due process. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *In re K.M.L.*, 443 S.W.3d 101, 118–19 (Tex. 2014).

Lack of notice, however, must be demonstrated on the record. A failure to give notice of a trial setting is grounds for reversal, but we begin our analysis with the presumption that the trial court heard the case only after giving proper notice to the parties. *Brandon v. Rudisel*, No. 14-18-00283-CV, 2019 WL 4071863, at *3 (Tex. App.—Houston [14th Dist.] Aug. 29, 2019, no pet. h.). Father had the burden to make an affirmative showing that he was not given notice of the trial, and to submit competent evidence showing that he had no notice. *See Boateng v. Trailblazer Health Enterprises, L.L.C.*, 171 S.W.3d 481, 492 n. 4 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Father has not met this burden. On December 18, 2018, the trial court signed an order after a special status hearing setting trial for February 14, 2019, at 9:00 a.m. (and Father's previous (third) attorney was present at the special status hearing). Trial initially commenced on February 14, 2019, but was recessed after the trial court ordered mediation. Trial resumed May 9, 2019. The trial court's order complies with Rule 245 in that it gives more than 45 days' notice of the trial setting. Rule 245 further provides that when a case has been previously set for trial, the trial court may reset the case "to a later date on any reasonable notice to the parties or by agreement

of the parties."

The record reflects reasonable notice of the reset trial setting. Father's claim of lack of notice was disputed by affidavit and testimonial evidence. The trial court as the trier of fact was entitled to believe the caseworker's testimony that Father had actual notice of the trial setting.

The trial court did not abuse its discretion in denying Father's motion for new trial. We overrule Father's issue challenging the trial court's denial of the motion for new trial.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's predicate termination findings under section 161.001(b)(1)(D) and (E). The trial court's best-interest and conservatorship findings are also supported by legally and factually sufficient evidence. The trial court did not abuse its discretion in denying Father's motion for new trial. We overrule Father's challenges and affirm the trial court's "Final Decree of Termination."


/s/     Meagan Hassan
         Justice


Panel consists of Chief Justice Frost and Justices Wise and Hassan.

24